**[J-77-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, OFFICE OF ATTORNEY GENERAL, BY ATTORNEY GENERAL DAVID W. SUNDAY, JR. | : | No. 32 WAP 2024 |
| | : | Appeal from the Order of the Commonwealth Court entered July 3, 2024, at No. 861 CD 2023, Affirming the Order of the Court of Common Pleas of Allegheny County entered August 1, 2023, at No. GD-20-9374. |
| v. | : | |
| GILLECE SERVICES, L.P., D/B/A GILLECE PLUMBING, HEATING, COOLING, AND ELECTRICAL, INC., GILLECE PLUMBING AND HEATING, INC., ROOTER-MEDIC, ELECTRIC MEDIC, GILLECE PLUMBING AND HEATING, INC.,THOMAS J. GILLECE, INDIVIDUALLY AND AS OWNER OF GILLECE SERVICES, L.P., GILLECE ENERGY, L.P., AND GILLECE PLUMBING AND HEATING, INC., JAMES F. HACKWELDER, INDIVIDUALLY AND AS FIELD SUPERVISOR FOR GILLECE SERVICES, L.P., AND JOSEPH NIKOULA, INDIVIDUALLY AND AS FIELD SUPERVISOR FOR GILLECE SERVICES, L.P. | : | ARGUED: October 7, 2025 |
| APPEAL OF: GILLECE SERVICES, L.P., D/B/A GILLECE PLUMBING, HEATING, COOLING, AND ELECTRICAL, INC., GILLECE PLUMBING AND HEATING, INC., AND THOMAS J. GILLECE | : | |

**OPINION**

**JUSTICE McCAFFERY**                    **DECIDED:  APRIL 30, 2026**

This appeal concerns the interaction of two different statutes.  One is the Unfair Trade Practices and Consumer Protection Law (the UTPCPL).[1]  It regulates a broad category of contracts for goods and services, prohibiting certain unfair or deceptive commercial practices.  The UTPCPL also gives consumers the right to rescind certain contracts "by notifying, **in writing**, the seller within three full business days following the day on which the contract … was made[.]"  73 P.S. § 201-7(a) (emphasis added).

The other statute is the Home Improvement Consumer Protection Act (HICPA),[2] which regulates the narrower category of home improvement contracts.  HICPA mandates that consumers be "permitted to rescind the contract without penalty … within three business days of the date of signing" the contract.  73 P.S. § 517.7(b).  Absent from HICPA's right to rescind is any explicit requirement that the cancellation of the contract be made in writing.

Before us presently, then, is the following question: When a contract falls within the ambit of both the UTPCPL and HICPA, is a consumer required to cancel in writing? The answer is no.  Today, we hold that HICPA (subject to its other provisions) requires home improvement contractors to permit consumers to cancel their contracts within three business days when consumers provide actual notice of cancellation to the contractors, even if that notice is not in writing.

**I.  FACTS AND PROCEDURAL HISTORY**

**A.  Facts**

In 2020, the Pennsylvania Office of Attorney General (OAG) filed a civil enforcement action against, *inter alia*, Gillece Services, LP, its General Partner, Gillece

---

[1] 73 P.S. §§ 201-1 – 201-10.

[2] 73 P.S. §§ 517.1 – 517.19.

Plumbing & Heating, Inc., and Thomas J. Gillece, individually (collectively, Gillece). The factual background for the action comes from three separate incidents.

First, on April 9, 2017, Jacob Wiley entered into a home improvement contract with Gillece for the replacement of a sewer pipe. A Gillece employee told Wiley the work would begin the next morning. That evening, however, Wiley became hesitant about the price, called a Gillece dispatcher, and stated he wanted to cancel the contract. Wiley testified that the dispatcher replied, "Okay. We'll let them know." Deposition of Jacob Wiley, 11/14/2022, at 37 (R.R. at 87a). A Gillece employee entered a note in the company's records that night indicating Wiley wanted to cancel the contract. Yet the next morning, a Gillece dispatcher called Wiley and stated a work crew was on its way. Wiley told the dispatcher he did not want the work done and had already cancelled. The crew arrived nonetheless, and Wiley's fiancée handed them a written notice of cancellation form (which he had planned to mail to Gillece that day), and the crew left.

The second incident involved a contract with Gillece that Ryan Mack signed on Friday, July 13, 2018, for the repair of an underground sewer line. Later that day, Gillece employees began digging a hole in Mack's yard, but did no further work over the weekend. On Monday, July 16, 2018, Mack provided Gillece with a written notice of cancellation. Gillece employees returned to refill the hole, but Mack prevented them from entering his property. Initially, the Gillece employees refused to leave the property without either filling the hole or receiving payment for digging it. They left only after Mack contacted the local police. Gillece later sued Mack, claiming that Mack had been unjustly enriched by Gillece's work digging the hole.

The final incident involved a contract Cheri Rose signed with Gillece at her home on October 14, 2018, for repairs to a sewage pipe under her driveway. Later that evening, like Wiley, she called Gillece to cancel the work, which was scheduled to begin the next

morning. The employee with whom Rose spoke stated she could not cancel the contract herself but said she would pass along the message. The next morning, however, a Gillece dispatcher sent the following message to the work crew: "She mentioned she wanted to cancel when she called in last night. She MUST speak with [S]teve to cancel. She hasn't taken his calls. Just get there and begin the work PLEASE!!!!!!!!!!" Commonwealth's Motion for Partial Summary Judgment, 4/3/2023, at 13 (R.R. at 36a). While Rose was at work, the crew dug a hole in her driveway and removed a portion of the sewage pipe. Rose later demanded that Gillece either replace the section of pipe or reinstall the removed portion, but a Gillece employee refused. The employee also threatened to refill the hole if Rose did not sign a document accepting responsibility for the hole, which she did. The following day, October 16, 2018, Rose delivered a written notice of cancellation to Gillece. *See* Deposition of Cheri Rose, 6/1/2022, at 29-30 (R.R. at 108a). Gillece eventually replaced the pipe in February 2019.

## B. Procedural History

The OAG initiated a civil enforcement action pursuant to Section 4 of the UTPCPL, which provides that "[w]henever the Attorney General … has reason to believe that any person is using or is about to use any method, act or practice" prohibited by the UTPCPL, "[they] may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice." 73 P.S. § 201-4. Because a violation of HICPA is also considered a violation of the UTPCPL, *see* 73 P.S. § 517.10, the OAG possessed enforcement authority of the alleged violations of both statutes. The OAG included numerous counts in its complaint, but the only count relevant to this appeal is Count III, in which the OAG alleged Gillece rejected timely efforts to cancel home improvement contracts if the notice of cancellation was not in writing.

Following discovery, the OAG filed a motion for partial summary judgment. The trial court found OAG established Gillece received "phone calls from customers seeking to cancel home improvement contracts and, despite such notice, would proceed to send crews to the customers' properties and attempt to commence work, refusing to honor the attempt at cancellation unless and until a signed notice" was received. *Off. of Att'y Gen. by Henry v. Gillece Servs., LP*, 320 A.3d 790, 793 (Pa. Cmwlth. 2024).

Relevant here, the trial court determined Gillece violated Section 7(b) of HICPA, 73 P.S. § 517.7(b), because Gillece refused to permit customers to rescind their contracts within three business days. Consequently, the court granted the OAG's motion for partial summary judgment and issued a permanent injunction directing Gillece to "permit customers to rescind their home improvement contracts without penalty within three (3) business days of the date of signing, regardless of the medium used by the customer to provide actual notice of cancellation" and prohibiting Gillece from "misrepresent[ing] in any manner a customer's right to cancel a home improvement contract[.]" Trial Court Opinion, 9/22/2023, at 4 (*citing* Trial Court Order, 8/1/2023, ¶ 16).

In its opinion, the trial court explained that "HICPA functions much like an expansion upon the [UTPCPL.]" Trial Court Opinion, 9/22/2023, at 2-3 (citation omitted). The court observed HICPA "establishes additional consumer safeguards for transactions involving [h]ome [i]mprovement [c]ontracts," while the UTPCPL deals with a much broader group of contracts for goods or services. *Id.* at 2 n.3. Because the UTPCPL mentions written cancellation in its text and HICPA does not, the trial court reasoned HICPA contains a written cancellation requirement only if HICPA's provision "impliedly incorporated the [UTPCPL] requirements." *Id.* at 10.

The court concluded the UTPCPL's provision was not impliedly incorporated because there was "no indication, whether in the statutory text or otherwise, that the

General Assembly intended the [UTPCPL] written notice requirements be applicable to [HICPA]." Trial Court Opinion, 9/22/2023, at 10. The court provided several reasons for its conclusion. First, the UTPCPL references HICPA repeatedly, indicating "the legislators could cite [UTPCPL] requirements with specificity where they considered them applicable to [ ] HICPA." *Id.* Second, the "absence of written notice requirements for consumer contract re[s]cission and cancellation is in line with [ ] HICPA's policy of expanding consumer protections." *Id.* at 11 (citation omitted). Third, the absence of written notice requirements is consistent with expanded protections in other contexts, such as insurance contracts, which customers may cancel through an overt act. *See id.* at 11-12 (citations omitted). Thus, the court held a plain reading of HICPA indicates home improvement contractors "must cancel [h]ome [i]mprovement [c]ontracts when a customer gives notice of cancellation within three days of signing, regardless of the medium used by the customer to provide actual notice of cancellation." *Id.* at 12 (citation and quotation marks omitted).

Because the trial court granted permanent injunctive relief, the order was immediately appealable under Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure.[3] On appeal, Gillece raised various issues, which the Commonwealth Court "distilled as follows: whether the trial court erred in construing HICPA not to require written notice to cancel home improvement contracts." *Gillece*, 320 A.3d at 794-795. The Commonwealth Court determined the trial court "ably addresse[d]" the issue, adopted and appended the trial court opinion, and affirmed on that basis. *Id.* at 795.

## II. ISSUES

---

[3] As noted by the Commonwealth Court, "other matters (civil penalties, costs, and restitution) remain to be resolved at trial[.]" *Gillece*, 320 A.3d at 793 n.4.

Gillece petitioned for allowance of appeal to this Court, and we granted allocatur to consider the following questions:

a. Whether [h]ome [i]mprovement [c]ontracts covered by both the Pennsylvania [UTPCPL] and [HICPA] may be cancelled by a consumer, verbally, in person or over the telephone, or otherwise, "regardless of the medium used by the customer to provide actual notice of cancellation"?

b. Does the [l]ower [c]ourt's decision create a result that is impossible to comply with, where if [p]etitioner complies with the strict terms of the UTPCPL, it will engage in misrepresentation of the consumer's right to cancel, in violation of both the [t]rial [c]ourt's [i]njunction and the UTPCPL?

*Off. of Att'y Gen. by Henry v. Gillece Servs., L.P.*, 329 A.3d 1127, 1128 (Pa. 2024) (alterations in original). Because these two issues are interrelated, we will consider them together.

## III. ANALYSIS

The combined question before us is one of pure law: whether HICPA requires home improvement contractors to honor cancellations of home improvement contracts even when the notice of cancellation is not in writing, or whether the UTPCPL's written cancellation provision controls even when the contract also falls under HICPA.[4]

### A. Statutory Interpretation

According to the Statutory Construction Act,[5] "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921. As this Court has repeatedly affirmed, "[t]he legislative will is revealed, first and foremost, by the explicit text of a statute." *Mimi Invs., LLC v. Tufano*, 297 A.3d 1272, 1284 (Pa. 2023) (*citing Commonwealth v. Griffith*, 32 A.3d 1231, 1235 (Pa. 2011) (stating "the best indication of legislative intent is the plain text of the

---

[4] For purposes of this appeal, we assume, without deciding, that the UTPCPL requires that notice of cancellation be given in writing.

[5] 1 Pa.C.S. §§ 1501-1991.

statute")).  Therefore, we turn to the text of the two relevant provisions providing a right to rescind.

In the UTPCPL, Section 7(a) allows consumers to avoid contracts for goods or services by notifying the seller of cancellation — in writing — within three business days:

> Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident at his residence either in person or by telephone, that **consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made** and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale. Such notice of rescission shall be effective upon depositing the same in the United States mail or upon other service which gives the seller notice of rescission.

73 P.S. § 201-7(a) (emphasis added).

In HICPA, Section 7(b) requires home improvement contracts to permit the rescission of contracts within three business days of the date of signing:

> **Right of rescission. --**An individual signing a home improvement contract, except as provided in the emergency provisions of section 7 of the [UTPCPL], **shall be permitted to rescind the contract without penalty** regardless of where the contract was signed, **within three business days of the date of signing**.

73 P.S. § 517.7(b) (emphases added; footnote omitted).

The key difference between the two provisions is that the UTPCPL mentions notification of cancellation **in writing**, while HICPA merely requires a home improvement contractor to permit rescission within three business days.  The absence of an explicit writing requirement in HICPA is significant.  "[A]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says [;] [o]ne must also listen attentively to what it does not say." *Wunderly v. Saint Luke's Hosp. of Bethlehem*, 345 A.3d 692, 701-702 (Pa. 2025) (alterations in original; citation omitted); *see also* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 536

(1947) ("One more caution is relevant when one is admonished to listen attentively to what a statute says.  One must also listen attentively to what it does not say.").

HICPA, of course, does not say cancellation must be in writing.  Therefore, if contracts governed by HICPA must be cancelled in writing, it is only because the UTPCPL writing cancellation requirement is implicitly imported into HICPA.[6]  We, however, reject that proposition, and hold there is no requirement that contracts subject to HICPA be cancelled in writing.  Several contextual considerations persuade us to reach this conclusion.

First, as a principle of statutory interpretation, specific — or special — provisions prevail over general provisions.  As the Statutory Construction Act explains:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, **the special provisions shall prevail and shall be construed as an exception to the general provision**, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933 (emphasis added).  The noted English philosopher and jurist Jeremy Bentham once articulated the justification for this principle: "[T]he particular provision is established upon a nearer and more exact view of the subject than the general, of which it may be regarded as a correction."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (1st Ed. 2012) (hereafter, "*Reading Law*") (*citing* Jeremy Bentham, "A Complete Code of Laws," in 3 *The Works of Jeremy Bentham* 210 (John Bowring Ed. 1843)).

Here, it is possible to give effect to both provisions: Consumers "may avoid the contract" by returning the UTPCPL's cancellation form, and home improvement contractors "shall [ ] permit[]" consumers to cancel if the consumers give notice of

---

[6] *See supra* note 4.

cancellation by other means. 73 P.S. § 201-7(a); 73 P.S. § 517.7(b). Yet even if a conflict does exist, the provision from HICPA must control because HICPA contains the more specific provision. HICPA governs a **specific** set of contracts pertaining to home improvement, while the UTPCPL governs a much broader set of contracts pertaining more **generally** to goods and services. HICPA's language is "established upon a nearer and more exact view of the subject" at issue here, namely home improvement contracts. *Reading Law* at 183 (citation omitted). Therefore, the principles of statutory construction tell us that the special provision in HICPA bestowing a more expansive ability to cancel must prevail, even if the more generally applicable right to cancel bestowed by the UTPCPL requires written notice when a home improvement contract is not at issue.

The conclusion that HICPA contains the more specific provision is bolstered by Section 10 of the Act. Section 10 states that "[a] violation of any of the provisions of [HICPA] shall be deemed a violation of the [UTPCPL]." 73 P.S. § 517.10. This has the effect of placing the narrower, more specific category of HICPA-governed transactions into the broader, more general category of UTPCPL-governed transactions. A violation of HICPA is a *per se* violation of the UTPCPL, but the opposite is not true.

A second reason to conclude that HICPA contains no written cancellation requirement is that HICPA was enacted after the UTPCPL. The Statutory Construction Act again provides us with guidance, explaining that later enactments generally control over earlier ones: "Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." 1 Pa.C.S. § 1936. The UTPCPL was enacted in 1968. *See Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). HICPA, on the other hand, was enacted 40 years later in 2008. *See Mid-Atl. Sys. of WPA, Inc. v. Tax Off. of the Municipality of Monroeville*, 204 A.3d 579, 588 (Pa. Cmwlth. 2019). Consequently, to the

extent the two provisions present a choice between requiring or not requiring written notice, HICPA's later provision — which does not mention written notice — should control.

Third, HICPA contains a section explicitly repealing earlier enactments that contradict it. HICPA states that "[a]ll acts and parts of acts are repealed insofar as they are inconsistent with this act." 73 P.S. § 517.18. Accordingly, the more liberally framed right to rescind found in HICPA should apply to home improvement contracts, even if the UTPCPL would require more from consumers who wish to cancel.

A fourth contextual indication that confirms our holding is that HICPA's recission provision cross-references the UTPCPL's rescission provision. Section 7(b) of HICPA asserts consumers "shall be permitted" to rescind a contract, "except as provided in the emergency provisions of section 7 of the act of December 17, 1968 (P.L. 1224, No. 387), known as the [UTPCPL.]" 73 P.S. § 517.7(b) (footnote omitted).[7] Section 7 of the UTPCPL houses both the emergency provisions and the language specifying that contracts may be cancelled "in writing[.]" 73 P.S. § 201-7(a). HICPA's explicit reference to the UTPCPL section that expressly includes the words "in writing" makes their absence all the more conspicuous in HICPA. This further suggests there is not a written notice requirement in HICPA.

Finally, the purpose behind these two laws confirms our interpretation of the statutory language. The "mischief to be remedied" or the "object to be attained" by a statute can be useful indications of the statute's meaning, even if the "the letter of [a statute] is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b), (c)(3)-(4). It is well-established that a "textually permissible interpretation that furthers rather than obstructs [a statute's] purpose should be favored." *Reading Law* at

---

[7] The emergency provisions permit a consumer to waive the three-day right to rescind, thereby allowing contractor to begin work immediately in case of emergency. *See* 73 P.S. § 201-7(j.1)-(o).

This is because interpretation "always depends on context," and "context always includes evident purpose[.]" *Id.*

Here, the purpose of both the UTPCPL and HICPA is relatively uncontroversial. Both are consumer protection statutes; hence, they were designed to protect consumers. *See Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018) ("The UTPCPL was created to even the bargaining power between consumers and sellers in commercial transactions, and to promote that objective, it aims to protect the consumers of the Commonwealth against fraud and unfair or deceptive business practices." (citation omitted)); *Mid-Atl. Sys.*, 204 A.3d at 588 ("HICPA was enacted in 2008 with the purpose of protecting consumers from a variety of fraudulent and deceptive practices by home improvement contractors."). More specifically, the cancellation right itself is "primarily directed to providing protection to a consumer who falls prey to a seller who contacts the consumer at his or her home and consummates a sales transaction before the consumer has adequate time to reflect on the wisdom of the purchase." *Burke v. Yingling*, 666 A.2d 288, 291 (Pa. Super. 1995). Additionally, the title of a statute may give insight into its proper construction. *See* 1 Pa.C.S. § 1924 ("The title and preamble of a statute may be considered in the construction thereof. … The headings … of a statute shall not be considered to control but may be used to aid in the construction thereof."); *Reading Law* at 221 ("The title and headings are permissible indicators of meaning."). Here, the titles of both statutes include the words "consumer protection." 73 P.S. § 201-1; 73 P.S. § 517.1. This provides additional confirmation of the statutes' shared purpose.

The following example illustrates the usefulness of being attentive to statutory purpose. There is a "legendary story" about a zoning ordinance stating that "no drinking saloon may exist within a mile of any schoolhouse." *Reading Law* at 63. "Misinterpreting

and misapplying this provision, the court decided that a certain schoolhouse had to be moved." *Id.* (citation omitted). That outcome is "precisely backward [because t]he clear purpose of the statute, as gathered from the words alone ('no drinking saloon' is the prohibition), was to protect schoolhouses — not saloons." *Id.* Were we to favor Gillece's proposed interpretation, we would be committing the same error as the fictional court in the example above. The purpose of these statutes is to protect consumers. Gillece asks us to read HICPA to permit home improvement contractors to begin work they **know consumers are trying to cancel**, simply because the consumer did not return the UTPCPL's written notice. This would contradict the text of HICPA, which mandates that consumers be permitted to cancel, while simultaneously obstructing the statute's purpose.

### B. Gillece's Counterarguments

Gillece offers several counterarguments to the position we have articulated. However, we are ultimately unpersuaded by its contentions. To begin, Gillece argues "**all** of the contracts involved in this [a]ppeal are governed by **both** the UTPCPL and HICPA." Gillece's Brief at 18 (emphasis in original). Gillece observes the contracts were "for goods and services in a sum in excess of $25, entered into at the customer's residence, thus making the contracts subject to the UTPCPL." *Id.* at 22 (citations omitted). Consequently, Gillece argues, a "plain reading of the UTPCPL shows that … a customer's notice of cancellation must be in writing[.]" *Id.* at 18. We disagree. For the reasons given above, HICPA's right to rescind must be given effect, and that right is not limited by a written notice requirement. Reading the two statutes together necessarily involves applying the additional consumer protections conferred by HICPA to home improvement contracts.

Along the same lines, Gillece argues the lower courts misapplied the rules of statutory construction. Gillece contends that the UTPCPL and HICPA, because they both

relate to consumer protection, are *in pari materia* (*i.e.*, on the same subject) and therefore should be construed as one statute. *See* Gillece's Brief at 42 (*citing* 1 Pa.C.S. § 1932 ("Statutes *in pari materia* shall be construed together, if possible, as one statute.") (reformatted)). Gillece maintains the lower courts failed to construe the two statutes together as one so as "to give effect to all of its provisions." Gillece's Brief at 41 (*citing* 1 Pa.C.S. § 1921(a)). By "construing [the] cancellation requirements of HICPA and the UTPCPL separately[,]" Gillece asserts the lower courts "violated 1 Pa.C.S.[] § 1932." *Id.* at 43. Gillece further insists the lower courts violated 1 Pa.C.S. § 1933, which, as we have discussed, provides that when special and general provisions conflict, the "special provisions shall prevail and shall be construed as an exception to the general provision[.]" *Id.* at 44 (*citing* 1 Pa.C.S. § 1933). Gillece stresses the UTPCPL's cancellation provision is limited to contracts resulting from contact with a consumer "at [the consumer's] residence either in person or by telephone." *Id.* at 45 (*citing* 73 P.S. § 201-7(a)). Therefore, as Gillece views the statutes, HICPA offers the general provision that home improvement contracts may be cancelled within three days, while the UTPCPL offers the special provision clarifying that contracts signed at home must be cancelled in writing.

Nevertheless, as we explain above, we interpret the statutes differently, such that the UTPCPL contains the general provision and HICPA contains the special provision. The UTPCPL regulates a broader category of contracts for goods and services, while HICPA regulates a narrower category of home improvement contracts. The result of Gillece's construction would be that home improvement contracts signed outside the home could be cancelled orally, whereas those signed in the home could only be cancelled in writing. Yet the contextual considerations detailed above — such as the

relationship between the two statutes and the statutory purpose — persuade us that Gillece's interpretation is incorrect.[8]

Finally, we address Gillece's argument that it is impossible for contractors to comply with the decision below. Gillece reasons as follows: If contractors provide the notice required by the UTPCPL, they are telling consumers cancellation must occur in writing. Gillece maintains that by telling consumers cancellation must occur in writing, contractors are misrepresenting consumers' right to rescind under HICPA, which need not be in writing. *See* Gillece's Brief at 52-53. Gillece focuses on HICPA's mandate that a home improvement contract must "includ[e attached] copies of all required notices" and specifically must "include[] a notice of the right to re[s]cission under [Section 7(b) of HICPA.]" Gillece's Brief at 33 (*citing* 73 P.S. § 517.7(a)(3, 13)). However, Gillece points out that "HICPA does not provide a form for any 'required notices' that must be attached to or contained in the contract[.] … The only form of required notice concerning a notice of right to re[s]cission[] is set forth in the UTPCPL." *Id.* at 34. The UTPCPL, Gillece claims, "is crystal clear that cancellation under the UTPCPL must be in writing and delivered to the contractor to be valid." *Id.* According to Gillece, therefore, the lower courts' decision that no written notice of cancellation is required under HICPA means the

---

[8] Gillece also references the OAG's website, which contained various answers to frequently asked questions related to consumer protection laws. *See* Gillece's Brief at 28-32. Gillece emphasizes that the website stated cancellations under the UTPCPL "must be in writing" and directs contractors under HICPA to provide the written notice of cancellation from the UTPCPL "exactly as written in the law[.]" *Id.* at 31-32 (*citing* R.R. at 125a, 129a; emphasis omitted). Nevertheless, the portions of the website in the record do not explicitly state cancellations under HICPA must be in writing; they merely direct HICPA contractors to provide the UTPCPL written notice. Additionally, the section of the website pertaining to HICPA explained the answers "are not a complete explanation of the statute and [are] not a legal opinion. It is recommended that you carefully review the Home Improvement Consumer Protection Act and consult with a private attorney if you have any questions about the law or need legal [advice]." *Id.* at 29 (*citing* R.R. at 126a). Hence, any answers provided on the OAG'S website do not resolve the question before this Court.

notice that must be provided under the UTPCPL amounts to a misrepresentation of the consumer's right to rescind.

This argument is unavailing. The "Notice of Cancellation" provided in the UTPCPL begins, "You may cancel this transaction, without any penalty or obligation, within three business days from the above date." 73 P.S. § 201-7(b)(2). After conveying more details not relevant here, the notice concludes: "To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram, to (name of seller), at (address of seller's place of business) not later than midnight of (date)." *Id.* The notice does not, at any point, state a consumer may **only** cancel in writing. Thus, providing the UTPCPL's notice does not amount to a misrepresentation of the consumer's rights. The notice's information is accurate: the consumer may cancel by returning the written notice. Under HICPA, however, the consumer must also be permitted to cancel home improvement contracts if he or she provides actual notice of cancellation within the three-day period by other means, such as verbally by telephone or in person. In this way, contractors can comply with both statutes without conflict or misrepresentation.

## V. CONCLUSION

Subject to its other provisions, HICPA requires home improvement contractors to permit consumers to rescind their contracts during the three-day cancellation period when consumers provide actual notice of cancellation to the contractors, even if that notice is not in writing. Accordingly, the judgment of the Commonwealth Court is affirmed.

Justices Donohue, Dougherty, Wecht, Mundy and Brobson join the opinion.

Justice Brobson files a concurring opinion in which Justices Donohue and Mundy join.

Chief Justice Todd concurs in the result.